IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SIGRID GARAVITO, on behalf of herself and all others similarly situated, ) ) ) | |
| Plaintiff, ) | No. |
| ) | |
| v. ) | |
| ) | **JURY TRIAL DEMANDED** |
| SUNTRUST MORTGAGE, INC. and SUNTRUST BANKS, INC, ) ) | |
| ) | |
| Defendants. ) | |

**CLASS ACTION COMPLAINT**

Plaintiff Sigrid Garavito ("Garavito" or "Plaintiff") brings this class action complaint against Defendants Suntrust, NA and Suntrust Home Loans Servicing, LP (collectively "Defendants" or "Suntrust"), on behalf of herself and all others similarly situated, and complains and alleges upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

**I. NATURE OF THE ACTION**

1. In the wake of the recent economic crisis and real estate slump, thousands of homeowners and mortgage holders across the United States have sought to modify their mortgages. This unprecedented surge in demand has exposed a broad swath of improper banking and loan documentation practices, which has culminated in many class action lawsuits against large banks and mortgagors across the country.

2. This lawsuit specifically targets Suntrust's loan modification practices, which have harmed thousands of consumers nationwide. When Suntrust mortgagees enter into the "trial period" portion of the loan modification process, they are directed by Suntrust to make

payments for a designated period of consecutive months at a reduced (modified) rate, ostensibly to qualify for permanent modification. After consumers *follow* those directions during the trial period, however, Suntrust imposes substantial (but baseless) penalty fees and late fees, and then commences foreclosure proceedings against consumers.

3. Importantly, this lawsuit does *not* seek damages for Suntrust's failure to grant loan modifications pursuant to the terms of its consumer modification contracts. Rather, this lawsuit seeks damages on behalf of a nationwide class for improper fees assessed by Suntrust, and foreclosure proceedings commenced by Suntrust, that resulted directly from the customer's *compliance* with those contracts.

4. Accordingly, in this action, Plaintiff asserts the following claims on her own behalf and on behalf of the other members of the Classes defined below: breach of contract; fraud/intentional misrepresentation; constructive fraud/negligent misrepresentation; unjust enrichment; and violation of the Illinois Consumer Fraud Act, 815 ILCS 505/2.

## II. JURISDICTION AND VENUE

5. This Court has original jurisdiction pursuant to 28 U.S.C. § 1332(d)(2). In the aggregate, Plaintiff's claims and the claims of the other members of the Class exceed $5,000,000 exclusive of interest and costs, and there are numerous class members who are citizens of states other than SunTrust Mortgage's and SunTrust Banks's respective states of citizenship.

6. In addition, this Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the matter in controversy exceeds the sum of $75,000, exclusive of interests and costs, and is between citizens of different states.

7. This Court has personal jurisdiction over SunTrust Mortgage and SunTrust Banks under the Illinois long-arm statute, 735 ILCS 5/2-209, because a substantial portion of the wrongdoing alleged in this Complaint took place in and/or was directed toward the State of

Illinois. This Court also has personal jurisdiction over SunTrust Mortgage and SunTrust Banks because, on information and belief, SunTrust Mortgage and SunTrust Banks are registered to do business, and subject to general jurisdiction, in the State of Illinois.

8. Venue is proper in this County pursuant to 29 U.S.C. 1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred here, and Defendants regularly transact business in this District and are subject to personal jurisdiction in this District.

### III. PARTIES

*Plaintiff*

9. Plaintiff Sigrid Garavito is a citizen of the State of Colorado. During the time period relevant to this action, Plaintiff was a resident and citizen of the State of Illinois, and was subjected to Suntrust's misleading, deceptive and/or fraudulent practices, and sustained damages resulting from the conduct alleged herein.

*Defendants*

10. Defendant SunTrust Mortgage, Inc. ("SunTrust Mortgage") is a mortgage bank and home mortgage loan servicer. SunTrust Mortgage is a Virginia corporation headquartered and with its principal place of business in Richmond, Virginia. SunTrust Mortgage is a citizen of the State of Virginia.

11. SunTrust Mortgage is a wholly-owned subsidiary of SunTrust Banks, Inc. ("SunTrust Banks"), a Georgia corporation headquartered and with its principal place of business in Atlanta, Georgia. SunTrust Banks is a citizen of the State of Atlanta.

12. Currently, SunTrust Mortgage originates loans through 208 locations, maintains correspondent and broker relationships in 49 states, and services loans in 50 states and the District of Columbia. SunTrust Mortgage has serviced over one million home mortgage loans

nationwide, including loans in the state of Illinois. SunTrust Banks reported profit of $84 million for the third-quarter 2010. (News Release, SunTrust Banks, Inc., Higher Revenues and Lower Credit Costs Drive Earnings Per Share of $0.17 and Net Income of $84 Million (Oct. 21, 2010).)

13. As of December 31, 2009, SunTrust Banks had total assets of $174 billion and total deposits of $116 billion. On information and belief, SunTrust Banks directed, controlled, formulated, and/or participated in Defendant SunTrust Mortgage's loan servicing activities and is jointly and severally liable for SunTrust Mortgage's unlawful activity.

## IV.  FACTUAL BACKGROUND

*Troubled Asset Relief Program ("TARP")*

14. On October 3, 2008, the Emergency Economic Stabilization Act of 2008, Pub. L. No. 110-343, 122 Stat. 3765 (codified, as amended, at 12 U.S.C. 5201-5261, 31 U.S.C. 1105, and scattered sections of 26 U.S.C.), (the "EESA") was enacted into law.

15. Developed in response to the financial crisis facing the nation, EESA provided immediate authority and facilities that the United States Department of the Treasury could use to restore liquidity and stability to the financial system.

16. To this end, EESA authorized the Secretary of the Treasury to establish the Troubled Asset Relief Program ("TARP") to "purchase, and to make and fund commitments to purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary, and in accordance with this Act and policies and procedures developed and published by the Secretary." Pub. L. No. 110-343, § 101(a)(1), 122 Stat. 3765, 3767(2008) (codified at 12 U.S.C. § 5211).

*Home Affordable Modification Program*

17. As part of the TARP program, the Department of the Treasury introduced the Home Affordable Modification Program ("HAMP"), which established guidelines for mortgage servicers to adopt to modify loans for homeowners in financial need.

18. Although participation in the HAMP program is voluntary for services of non-Government Sponsored Enterprises (GSE), all servicers of individual loans owned or guaranteed by Fannie Mae and Freddie Mac are required to participate.

19. Under HAMP, mortgage loan servicers are obligated to take applications from distressed borrowers and make determinations with respect to their eligibility according to established guidelines. During a three-month trial period, borrowers are obligated to make three timely modified mortgage payments and submit a variety of financial paperwork. At the end of the three-month trial, the servicer is supposed to make a final determination as to whether a permanent loan modification will be granted.

20. SunTrust services Fannie Mae loans. Participation in HAMP is mandatory for all Fannie Mae servicers, including SunTrust. Participation means compliance with all HAMP guidelines. By continuing to service Fannie Mae loans, SunTrust was required to perform all services in compliance with all applicable federal, state, and local laws, specifically including state laws designed to prevent unfair, discriminatory, or predatory lending practices.

21. According to the MAKING HOME AFFORDABLE PROGRAM, HANDBOOK FOR SERVICERS OF NON-GSE MORTGAGES ("MHA Handbook"), SunTrust is required to evaluate all Fannie Mae loans that are 60 or more days delinquent, or that appear to be in imminent default, to determine which loans met the HAMP eligibility criteria. MHA Handbook at 4, 11, 13 (Version 3.2, June 2011) (*available at* https://www.hmpadmin.com/portal/programs/guidance.jsp).

22. Importantly, servicers are required to suspend foreclosure proceedings during HAMP evaluations and during trial modification periods. *Id.* at 14.

**Suntrust's Scheme to Impose Improper Fees During the Modification Trial Period**

23. Plaintiff and members of the proposed Classes entered into trial modification periods with SunTrust only to find that SunTrust refused to make a timely decision on the modifications, instead stringing borrowers along for many additional months without a decision – all the while imposing hefty penalty fees and, in many cases, ultimately commencing foreclosure proceedings.

24. When Suntrust mortgagees enter into the "trial period" portion of the loan modification process, they are directed by Suntrust to make payments for a designated period of consecutive months at a reduced (modified) rate, ostensibly to qualify for permanent modification. After consumers *follow* those directions during the trial period, however, Suntrust imposes substantial (but baseless) penalty fees and late fees, and then commences foreclosure proceedings against consumers.

25. SunTrust's goal appears to be to keep loans in default and arrears for as long as possible before ultimately foreclosing or selling the servicing rights to another mortgage servicer. This is precisely what SunTrust accomplishes by inviting borrowers to participate in HAMP (or other modification programs) and then encouraging them to continue making temporary payments when SunTrust has no intention to comply with HAMP requirements and/or offer permanent modifications, as Plaintiff's and the Classes' experiences exemplify.

26. Meanwhile, SunTrust profits from initiating and actively pursuing foreclosure while simultaneously collecting payments from mortgagors pursuant to illusory promises of forbearance, permanent modifications, or "workout" solutions.

**Facts Pertaining to Plaintiff Garavito's Experience**

27. On or about July 2009, Plaintiff Garavito called Suntrust and expressed interest in a loan modification on her mortgage, which was serviced by Suntrust.

28. Garavito submitted all of the requisite paperwork to Suntrust for the trial period plan ("TPP"), including the Fannie Mae Uniform Loan Modification Paperwork (Form 3156) used for HAMP modifications.

29. Garavito executed the final TPP documents on September 18, 2009 (the "TPP Contract"), which by its terms, provided that the TPP became effective on October 1, 2009.

30. While the principal and interest payments on her mortgage were originally $2,400.49, the TPP Contract provided that Garavito's payments would be $1,790.12 during the three-month term of the TPP provided by the TPP Contract.

31. Importantly, the TPP Contract provided that Suntrust "will suspend any scheduled foreclosure sale, provided I [Garavito] continue to meet the obligations under this Plan . . . ."

32. Almost immediately after the TPP began, despite the fact that Garavito made all payments on time and for the specified amount of $1,790.12, Garavito began receiving notices from Suntrust that she was in default on her account – which, according to the notices Garavito received, required payment of $2,400.49. She was also assessed various late fees and penalties.

33. Garavito repeatedly called Suntrust and spoke to customer service representatives to ask why she was receiving these notices. Each time, Suntrust representatives told Garavito that the notices were "automated," and that Garavito should ignore them and continue to abide by the terms of the TPP Contract – which she did.

34. Nonetheless, the default notices continued to be issued. On February 22, 2010, Garavito received a notice claiming that she was in default in the amount of $11,845.98. Again, Garavito called Suntrust and was told to ignore the so-called "automated notice."

35. On March 24, 2010, Garavito received correspondence from Suntrust indicating that Suntrust had referred the matter to an attorney to commence foreclosure proceedings against her. Garavito immediately called Suntrust, and was *again* told to ignore even *that* notice, that the letters are automated, and to continue making the reduced TPP payments.

36. On April 27, 2010, Garavito received correspondence from the law firm of "Pierce & Associates," stating that foreclosure proceedings had been commenced against Garavito, and that Garavito's mortgage note was being called in.

37. The April 27th letter stated that Garavito owed $426,586.69, inclusive of penalties and fees.

38. On information and belief, Suntrust has assessed thousands of dollars of fees to Garavito's account for purported late charges and attorneys' fees that Suntrust is paying its own lawyers.

39. Suntrust's foreclosure case is currently pending against Garavito in Cook County Civil Court (Case No. 10-CH-22704).

40. In addition to these baseless (but substantial) fees, and in addition to the imminent prospect of losing her home, Garavito has incurred additional damages, such as attorneys' fees and costs in the defense of the foreclosure action, plus substantial damage to her credit rating.

41. Consumers throughout the country have had similar experiences as a result of Suntrust's modification practices and unlawful scheme.

42. One consumer-oriented website details the following experiences of similarly situated consumers:

- I am a victim of an act by SunTrust Mortgage. SunTrust Mortgage had put me on a trial Home Loan modification process starting Jan 2009. By the contract agreement signed the lender agreed to lock in the modified monthly amount through HAMP(Home Affordable Modification Program) once the paper work was done and all facts reported by myself were verified. There was no follow up or updates. I called in at least once a month to check on the status of the process and there was always no straight answer. The famous answer was "we are behind, just keep paying the trial amount and check back later". One year later in Jan 2011, SunTrust Mortgage sold the loan to NationStar Mortgage Company, without disclosing or addressing the status of the Loan Modification contract. NationStar is demanding to collect all short payments trough out past year and accelerating the house to go into fore closure. I don't even believe Suntrust applied for HAMP on my loan as they were supposed to per contract; at least there is no evidence. Now my credit is a mess and I'm losing my house.

    Reza of San Jose, CA [posted on 5/13/11]

- My story is like a carbon copy of the ones ones below. . . . I was told not to make the payments and then I would qualify for a loan modification and the missed payments would disappear from my credit report when the modification went through. I was up to date on the payments until then. I did as I was told and it has been a nightmare ever since.

    I have received duplicate, outdated paperwork repeatedly. I have never received an account statement and when I asked about it, I was told not to worry about it, "just keep paying the $XXXX. at the Suntrust Bank." I have been doing so since the loan modification was started in June 2009. I have never received anything about amount changes or tax payments or anything like that from the mortgage company. Sept. 2009 I got papers saying my modification was complete. Nothing else until Dec. of 2010 when I received an account statement that said I owed Suntrust $6000!

    ….

    Finally they mailed me a letter stating the total amount which included lawyers fees!!!!!

    Bobbie of Ocala, FL [posted on 3/4/11]

9

- My story is much the same as those below. Tried to refinance my mortgage 2 years ago. Essentially I wanted to extend the remaining term from 7 years to 15 to reduce payments. Was told to go into a remodication program and started a 3 month trial program in Jan 2010. I was told if we made these three monthly payments on time, the new mortage agreement would be in affect.

  Now, a year later, still doing the trial payments and can't get any resolution. I have been asked to resend information countless times. I call almost every week and get a different story every time. My credit rating has been trashed down to 450 because Suntrust reports to the credit agencies I haven't paid my mortgage in a year despite having made all the trial payments properly.

  I am now getting served with forclosure notices and statements are showing I owe $14K in back payments (the difference between the old payments and the trial payments). I am getting hit with over $100/mo in late payment charges.

  It is impossible to get hold of anyone at SunTrust other than the call center. And they just kick the can down the road with another story, or request the same information over and over again.

  Welcome to 2 years of absolute hell.

  I can't believe they can continue to get away with this. I am totally frustrated and feel like there is no where to turn.

  Raabe of Cherry Hill, NJ [posted on 2/21/11]

(*See generally* http://www.consumeraffairs.com/finance/suntrust_mortgage.html; last accessed August 30, 2011).

## V. CLASS ACTION ALLEGATIONS

43. Plaintiff brings Counts I-IV, as set forth below, on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure on behalf of a class defined as:

> All consumers in the United States and its territories whose home mortgage loans are or were serviced by Suntrust and who have made payments pursuant to a HAMP Trial Period Plan or any similar temporary modification agreement offered by Suntrust (the "Class").

Excluded from the Class are Suntrust and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Class; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof.

44. Plaintiff brings Count V, as set forth below, on behalf of herself and as a class action, pursuant to the provisions of Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a subclass defined as:

> All consumers in the State of Illinois whose home mortgage loans are or were serviced by Suntrust and who have made payments pursuant to a HAMP Trial Period Plan or any similar temporary modification agreement offered by Suntrust (the "Illinois Subclass").

Excluded from the Illinois Subclass are Suntrust and its subsidiaries and affiliates; all persons who make a timely election to be excluded from the Illinois Subclass; governmental entities; and the judge to whom this case is assigned and any immediate family members thereof. The Class and Subclass are collectively referred to as "Classes," unless specifically indicated otherwise.

45. Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

46. **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** The members of the Class are so numerous that individual joinder of all Class members is impracticable. On information and belief, there are thousands of consumers who have been damaged by Suntrust's wrongful conduct as alleged herein. The precise number of Class members and their addresses is presently unknown to Plaintiff, but may be ascertained from Suntrust's books and records. Class members may be notified of the pendency of this action by recognized, Court-approved notice

dissemination methods, which may include U.S. mail, electronic mail, Internet postings, and/or published notice.

47. **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3).** This action involves common questions of law and fact, which predominate over any questions affecting individual Class members, including, without limitation:

   a. whether Suntrust engaged in the conduct as alleged herein;

   b. whether Suntrust has been unjustly enriched as a result of the conduct complained of herein;

   c. whether Suntrust engaged in unfair or deceptive acts or practices and/or unfair methods of competition in trade or commerce in violation of applicable laws;

   d. whether Plaintiff and the other Class members are entitled to actual, statutory, or other forms of damages, and other monetary relief and, if so, in what amount(s); and

   e. whether Plaintiff and the other Class members are entitled to equitable relief, including but not limited to injunctive relief and restitution.

48. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the other Class members' claims because, among other things, all Class members were comparably injured through the uniform misconduct described above and were subject to Suntrust' deceptive and misleading conduct.

49. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of both the Class and the Illinois Subclass because his interests do not conflict with the interests of the other Class and Illinois Subclass members he seeks to represent; he has retained counsel competent and experienced in complex class action

litigation; and Plaintiff intends to prosecute this action vigorously. Class and Illinois Subclass members' interests will be fairly and adequately protected by Plaintiff and his counsel.

50. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Suntrust has acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to Class and Illinois Subclass members as a whole.

51. **Superiority – Federal Rule of Civil Procedure 23(b)(3).** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages or other financial detriment suffered by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Suntrust, so it would be impracticable for Class members to individually seek redress for Suntrust' wrongful conduct. Even if Class members could afford individual litigation, the court system could not. Individualized litigation creates a potential for inconsistent or contradictory judgments, and increases the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI. CLAIMS ALLEGED

### COUNT I
### Breach of Contract (HAMP Trial Period Plan Agreement)
### (On behalf of the Class)

52. Plaintiff repeats the allegations of the preceding paragraphs of this Complaint as though fully alleged herein.

53. The TPP Contract is a valid and enforceable contract.

54. Plaintiff was required to provide documentation of her current income, make legal representations about her personal circumstances, and agree to other conditions and requirements in connection with the TPP Contract. In so doing, she suffered a "legal detriment" constituting adequate consideration.

55. Suntrust breached the TPP Contract by foreclosing on Plaintiff's home, and imposing other late fees and penalties, while the TPP was in effect, and despite that Plaintiff had complied with the TPP Contract.

56. Suntrust never notified Plaintiff that her application for permanent modification had been denied.

57. Plaintiff has incurred damages and other injury as a result of Suntrust's breach.

### COUNT II
### Fraud/Intentional Misrepresentation
### (On Behalf of the Class)

58. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

59. SunTrust invite borrowers to participate in HAMP (or other modification programs) and then encourages them to continue making temporary payments when SunTrust

has no intention to comply with HAMP requirements and/or offer permanent modifications, as Plaintiff's and the Classes' experiences exemplify.

60. After consumers *follow* those directions during the trial period, however, Suntrust imposes substantial (but baseless) penalty fees and late fees, and then commences foreclosure proceedings against consumers.

61. SunTrust's goal appears to be to keep loans in default and arrears for as long as possible before ultimately foreclosing or selling the servicing rights to another mortgage servicer. Meanwhile, SunTrust profits from initiating and actively pursuing foreclosure while simultaneously collecting payments from mortgagors pursuant to illusory promises of forbearance, permanent modifications, or "workout" solutions.

62. Suntrust accordingly had both motive and opportunity to commit fraud.

63. The foregoing allegations establish strong circumstantial evidence of conscious misbehavior.

64. Suntrust knew or should have known that its representations were inaccurate and that Plaintiff and the other Class members would act in accordance with and in reliance on Suntrust's representations.

65. Suntrust's omissions and misrepresentations were made with knowledge of their falsity, or with utter disregard and recklessness as to whether they were true or false, with the intent of inducing Plaintiff and the other Class members to rely on them.

66. As a direct and proximate result of Suntrust's misleading representations and the other conduct described above, Plaintiff and the other Class members sustained damages in an amount to be determined at trial.

## COUNT III
### Constructive Fraud/Negligent Misrepresentation
**(On Behalf of the Class)**

67. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

68. Suntrust should have known that its representations were inaccurate and that Plaintiff and the other Class members would act in accordance with and in reliance on Suntrust's representations.

69. Suntrust negligently and/or recklessly misrepresented the foregoing material facts relating to the loan modification processes to Plaintiff and the other Class members.

70. As a direct and proximate result of Suntrust's misleading representations and the other conduct described above, Plaintiff and the other Class members sustained damages in an amount to be determined at trial.

## COUNT IV
### Unjust Enrichment
**(On Behalf of the Class)**

71. Plaintiff incorporates by reference all of the above paragraphs of this Complaint as though fully stated herein.

72. Suntrust has received a benefit from Plaintiff and the other Class members, to which it was not entitled, in the form of the late fees and other penalties that it assessed and collected from Plaintiff and the other Class members, through its wrongful conduct, as alleged above, as well as those Class members' properties that it foreclosed on and took possession of.

73. Suntrust has knowingly appreciated and accepted this benefit which has resulted and continues to result in an inequity to Plaintiff and the other Class members.

74. Suntrust's appreciation and acceptance of this benefit is inequitable.

75. As a result of Suntrust's unjust enrichment, Plaintiff and the other Class sustained damages in an amount to be determined at trial. Plaintiff and the other Class members seek full disgorgement and restitution of Suntrust's enrichment, benefits, and ill-gotten gains acquired as a result of the unlawful and/or wrongful conduct alleged herein.

## **COUNT V**
### Violation of the Illinois Consumer Fraud Act
### (On Behalf of the Illinois Subclass)

76. Plaintiff incorporates by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

77. At all times relevant hereto, there was in effect in the State of Illinois a statute known as the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2 ("Consumer Fraud Act").

78. Suntrust was at all relevant times engaged in trade or commerce as defined by the Consumer Fraud Act.

79. Suntrust's representations set forth above were made with the intent that Plaintiff and the other members of the Illinois Subclass rely on them, and Plaintiff and the other members of the Illinois Subclass did justifiably rely on them.

80. Upon information and belief, the misrepresentations set forth above were known to be untrue at the time they were made by Suntrust.

81. The conduct set forth above constitutes unfair and deceptive conduct in violation of the Consumer Fraud Act.

82. As a result of Suntrust's conduct, Plaintiff and the other members of the Illinois Subclass have sustained damages in an amount to be determined at trial.

## VII.   REQUEST FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the other members of the Class and Illinois Subclass proposed in this Complaint, respectfully requests that the Court enter an Order awarding the following relief:

A. Declaring that this action is a proper class action nationwide, and certifying the Class and Illinois Subclass as requested herein;

B. Restitution and disgorgement of Suntrust's revenues to Plaintiff and the other Class and Illinois Subclass members generated from the unlawful practices as set forth herein;

C. Enjoining Suntrust from continuing the unlawful practices as set forth herein, directing Suntrust to engage in corrective measures, and directing Suntrust to identify, with Court supervision, victims of its conduct and pay them restitution;

D. An order awarding actual damages (including punitive damages) as allowable by law;

E. An Order awarding statutory damages to Plaintiff and the other Illinois Subclass members, as provided by the Consumer Fraud Act;

F. An Order awarding attorneys' fees and costs to Plaintiff and the other members of the Class and Illinois Subclass; and

G. Such other and further relief as may be just and proper.

## VIII.   JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of all claims in this Complaint so triable.

Dated:  August 30, 2011		Respectfully submitted,

					SIGRID GARAVITO

					By: _____
					One of Her Attorneys

Joseph J. Siprut
*jsiprut@siprut.com*
SIPRUT PC
122 South Michigan Avenue
Suite 1850
Chicago, Illinois  60603
312.588.1440
Fax: 312.878.1342

4836-7872-2314, v.  1