**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| SIGRID GARAVITO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| | ) | No. 11 C 6056 |
| v. | ) | |
| | ) | Judge John A. Nordberg |
| SUNTRUST MORTGAGE, INC., *et al.*, | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This case arises out of the foreclosure of plaintiff's home in Chicago. In an earlier minute order, we asked the parties to brief a possible jurisdictional question we noticed in reviewing the motion to dismiss briefs – namely, whether plaintiff's state law claims in this diversity lawsuit are barred by the *Rooker-Feldman* doctrine because the Illinois court entered a judgment of foreclosure against her a six weeks before she filed this lawsuit. We also asked the parties to brief the possible application of the *res judicata* doctrine. Each side has filed two supplemental briefs.[1] As set forth below, we conclude that *Rooker-Feldman* cannot apply under Seventh Circuit precedent. The *res judicata* issue will need to be addressed later after the state court issues a final judgment.

## **BACKGROUND**[2]

Plaintiff Sigrid Garavito filed this case as a putative nationwide class action. The claims arise out of the government's Home Affordable Modification Program ("HAMP") created in the aftermath of the 2008 financial collapse. Under HAMP, mortgage servicers were encouraged -- and in some cases required -- to enter into negotiations for a permanent modification of mortgage loans. The first step was an evaluation period in which the homeowner entered into a contract to temporarily allow a reduced mortgage payment while the mortgage servicer evaluated whether

---

[1]Plaintiff's opening and reply briefs will be referred to respectively as "PSM" and "PSR" and SunTrust's briefs as "DSM" and "DSR."

[2]Portions of this background section are taken from our earlier order.

the homeowner qualified for a permanent modification. This contract is known as a Trial Period Plan contract.

Plaintiff alleges that she and defendant SunTrust Mortgage entered into a TPP contract on October 1, 2009. According to plaintiff, while the TPP remained in effect, SunTrust was not allowed to foreclose on her home or impose late fees.

On May 27, 2010, SunTrust filed a foreclosure complaint against plaintiff and her husband. (Dkt. #37-1.) On July 15, 2011, the state court granted SunTrust's motion for judgment of foreclosure and entered a "Judgment For Foreclosure and Sale." (Dkt. #8-3.) The Judgment states that it is "fully dispositive" of the interests of the defendants who owe Suntrust $462,576.90. (*Id.* at 1.) Plaintiff did not appear at this hearing, although she sent her real estate agent. (Dkt. #37-3 at ¶ 8.)

Six weeks after this hearing, on August 30, 2011, plaintiff filed her complaint in this Court. She is represented here by the law firm of Siprut PC and seeks to represent a nationwide class. Neither side has sought a ruling on class certification.

Back in state court. On September 29, 2011, plaintiff (still proceeding *pro se*) filed a Petition to Vacate the July 15th foreclosure judgment. (Dkt. # 37-3.) She explained that at the time of the foreclosure hearing she was living in Littleton, Colorado and had not yet been able to secure an attorney in Illinois. (*Id.* at ¶¶ 2, 4.) She also asserted that SunTrust had served her and her husband with "foreclosure papers while they were in [a] trial modification period." (*Id.* at ¶ 21.) This is the same general argument that underlies all her claims in this Court. It is not known whether the Siprut law firm representing her in this Court was aware of or assisted in this effort.

Sometime shortly thereafter, plaintiff located an attorney to represent her in state court. (Dkt. #37-4.) On Oct. 14, 2011, attorney Sidney B. Smith filed on plaintiff's behalf an Emergency Motion To Stay Order Of Sale. (*Id.*) In this motion, attorney Smith repeated the arguments about the TPP contract and how it provided that plaintiff could pay a reduced monthly mortgage payment of $1,790.12. (*Id.* at ¶¶ 7-8, 13, 16.) On November 1, 2011, the state court allowed plaintiff's attorney to file an amended petition to vacate. (Dkt. #37-5.)

However, the amended petition was not filed until February 3, 2012, and it was filed by a new attorney, M. Reese Everson, who apparently took over for Smith. (Dkt. #42-1.) The petition, which is 11 pages, alleges that SunTrust committed fraud relating to the transfer, signing, and recording of mortgage documents. (*Id.* at ¶¶ 4-9.) Plaintiff alleges she first discovered this fraud in late December 2011 after she "came into contact with a person who is [a] well qualified professional, who reviewed her foreclosure documents." (*Id.* at ¶ 6.) Again, we do not know whether plaintiff's current federal counsel was involved in this review. Plaintiff's state court counsel warned in the petition that, if the foreclosure judgment was not vacated, it "may be considered as Res Judicata and hinder [plaintiff's] other claims." (*Id.* at ¶ 21.) This petition, however, does not re-assert the previously raised HAMP claims. The amended petition was

noticed up for a hearing on March 13, 2012 but plaintiff's counsel never showed up for the hearing. (DSR at 3.)

One additional fact to consider. Although not addressed by the parties in their supplemental briefs, it appears that plaintiff filed a *pro se* bankruptcy petition in the Northern District on February 7, 2012.[3] *See* Case No. 12-04213, ILND-Bkr, Dkt # 1. In her petition, plaintiff listed her residence as 1684 South Albany in Chicago, which is the address of the foreclosed property, although she listed a mailing address in Littleton, Colorado. (*Id*.) Plaintiff was seeking (among other things) to "halt[] an execution sale of her real property." (12-04213 Dkt. # 10 at p.2.) The bankruptcy case was eventually dismissed because plaintiff did not file certain documents.

## ANALYSIS

Plaintiff relies on only one argument to defeat both the *Rooker Feldman* and *res judicata* doctrines. She argues that the state court case is ongoing and therefore no final and appealable judgment has been entered. (PSM at 1.) Plaintiff specifically points out that "SunTrust has *not* completed a sale of Plaintiff's property, and has *not* obtained a court order confirming the foreclosure sale or distributing the resulting proceeds – all of which must occur before SunTrust obtains a final judgment in the pending foreclosure action." (*Id.*)

SunTrust in its reply brief concedes that plaintiff is correct about a final judgment being required for *res judicata*, although it asks us to re-visit the doctrine later when the state court does eventually issue a final judgment. (DSR at 2.) SunTrust continues to argue, however, that *Rooker-Feldman* is applicable. Although it agrees that the state court case is ongoing, it argues that the remaining proceedings only address the sale of the property and will not reverse the foreclosure judgment already entered.

Both sides have made reasonable arguments and have cited to cases supporting their positions. As summarized in our earlier order, *Rooker-Feldman* "deprives federal courts of subject matter jurisdiction where a party, dissatisfied with a result in state court, sues in federal court seeking to set aside the state-court judgment and requesting a remedy for an injury caused by that judgment." *Johnson v. Orr*, 551 F.3d 564, 568 (7th Cir. 2008). Further, "[i]f the injury the plaintiff complains of resulted from, or is inextricably intertwined with, a state-court judgment, then lower federal courts cannot hear the claim." *Id.* The complaint need not specifically challenge the state court order for the doctrine to apply. The district court should "look beyond the four corners of the complaint to discern the *actual injury* claimed by the plaintiff." *Id.* (emphasis in original).

In *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005), the Supreme court expressed concern that the doctrine had "sometimes been construed to extend far beyond

---

[3]We discovered this case in our routine docket search for related cases.

-3-

the contours of the *Rooker* and *Feldman* cases." *Id.* at 283. The Court offered the following re-statement of the doctrine:

> The *Rooker-Feldman* doctrine, we hold today, is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.

*Id.* at 284.

The key phrase relevant to our dispute is "state-court loser." Does it require a final judgment or is an interlocutory judgment sufficient? After *Exxon*, courts have debated the question and given different answers. *See generally* Dustin E. Buehler, "Jurisdiction, Abstention, and Finality: Articulating A Unique Role For The *Rooker-Feldman* Doctrine," 42 Seton Hall L. Rev. 553, 559, 565-66 (2012) [hereinafter, Buehler] ("it is unclear whether *Rooker-Feldman* applies to interlocutory state court orders" as some circuits only apply the doctrine if there is a final judgment while others "have adopted an intermediate approach, in which *Rooker-Feldman* protects some state court interlocutory orders but not others").

SunTrust argues that the Supreme Court in *Exxon* never explicitly held that there must be a final and appealable judgment. (DSR at 6.) It notes that under Illinois law, the foreclosure judgement is "fully dispositive" of the parties' interests. (*Id.*) SunTrust cites to several district court and bankruptcy cases supporting its view that the foreclosure judgment is sufficiently final for *Rooker-Feldman*. *Id.* at 6-9 (citing *In re Hodges*, 350 B.R. 796 (Bankr. N.D. Ill. 2006) and *Gilbert Land Dev., Inc. v. Wells*, 2011 WL 1701800 (C.D. Ill. Mar. 9, 2011)).

Plaintiff argues that *Rooker-Feldman* requires a final judgment, which cannot be entered until there is an order confirming the sale of the property. (PSM at 6.) Up until this point, the foreclosure judgment is "strictly interlocutory" and "can be modified or vacated at any time." (*Id.* at 8, 9.) Plaintiff thus argues she is not a loser in state court because she may still win. Her interpretation is better, she argues, because it creates a "simple bright-line rule." (PSR at 3.) She relies on a Third Circuit decision and other cases. *See Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

Although plaintiff emphasizes the importance of the finality requirement, she is not always clear why it would make a difference here. It is true the foreclosure case is still ongoing, but the issues left for adjudication are the sale of the property and distribution of proceeds and not whether SunTrust has the right to foreclose, nor the specific amount plaintiff owes under the mortgage, which are the issues raised by the claims filed here. In her supplemental briefs, plaintiff mentions up two possibilities. First, she suggests that she may still get the foreclosure judgment vacated. In her affidavit, she states that her "counsel of record in the foreclosure proceeding" (presumably Everson) is "currently" working to vacate the July 15th order. (Dkt. #

40-1 at ¶ 5.) SunTrust questions whether this assertion is true. It notes that Everson never showed up to present the amended petition to vacate in March 2012. (DSR at 3; Dkt. #42-1 at 1.)

Second, plaintiff claims the parties have discussed a possible mortgage modification. She states that "SunTrust recently expressed its willingness to modify Plaintiff's mortgage pending the approval of her application." (PSM at 3.) She believes that, if SunTrust approves her application, then this "would presumably terminate the foreclosure proceedings." (Dkt. # 40-1 at ¶¶ 7-8.) SunTrust again disputes plaintiff's assertion. It states that it "has not received an application for a loan modification and is not currently considering [plaintiff] for a possible loan modification." (DSR at 4.) SunTrust admits that it did "express[] a willingness to *consider* the *possibility* of modifying her mortgage *in the context of a confidential settlement communication between counsel*." (*Id.*; emphasis in original.) However, SunTrust is upset because it believes plaintiff "abus[ed] the confidence of a settlement communication" and "grossly mischaracteriz[ed] the efforts of her 'counsel of record in the foreclosure proceeding.'" (*Id.*) This accusation by SunTrust is ambiguous about who (allegedly) mischaracterized what plaintiff's state court counsel said – was it plaintiff herself or her federal counsel? This dispute need not be resolved now, although it does illustrate some of the risks involved when a party proceeds simultaneously in multiple courts litigating the same issue but using different counsel and in one court representing herself.

We believe the purposes behind the *Rooker-Feldman* doctrine would be served by allowing an Illinois foreclosure judgment to satisfy the finality requirement. Here, from a practical and psychological perspective, it certainly seems as if plaintiff is a state-court loser attempting to get a second bite at the apple by filing a federal case. She filed this lawsuit just six weeks after the foreclosure judgment was entered. The timing by itself suggests she was dissatisfied with the state court judgment and came to federal court to try to "undo" that judgment. *Exxon Mobil*, 544 U.S. at 293.[4] While it is true that plaintiff at that point still had the option of filing a motion to vacate, which she in fact later did, she would have known that her chances of succeeding were much lower after the judgment had been entered. Moreover, the claims plaintiff asserts in this Court, which are all state law claims, are inextricably intertwined with the state court judgment. She seeks a judgment from this Court that she owes a lesser amount on her mortgage than the amount the state court has *already determined* that she owes. If she is successful here, there would be two conflicting judgments existing side by side – one federal and one state – each stating that she owes a specific but different amount on her mortgage.

However, we conclude that we cannot apply *Rooker-Feldman* because the Seventh Circuit has ruled that "an interlocutory ruling does not evoke the doctrine or preclude federal jurisdiction." *TruServ Corp. v. Flegles, Inc.*, 419 F.3d 584, 591 (7th Cir. 2005). Although this case did not address the specific issue of a foreclosure judgment and although it does not contain

---

[4]Similar arguments could be made regarding her bankruptcy petition, which was filed in February 2012.

extensive analysis, we believe *TruServ* is binding and prevents the application of the doctrine here. *See* Buehler at 565 & n.78 (listing the Seventh Circuit as one of the circuits that "apply the doctrine only to final state court judgments").

      Although *Rooker-Feldman* is no longer available, SunTrust asks us to consider applying *res judicata* once the state court judgment becomes final. Plaintiff, by only contesting the finality requirement, seems to have conceded that *res judicata* will bar all her claims once the state court judgment becomes final. This raises the question of whether we should stay this case until the state court has issued a final judgment. In *Exxon Mobil*, the Supreme Court noted that *Rooker-Feldman* "does not otherwise overrule or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." 544 U.S. at 284, 292 (citing the *Colorado River* abstention doctrine); *see also Johnson v. Lopinot*, 2010 WL 4595669, *4 (S.D. Ill. Nov. 4, 2010) (finding *Rooker-Feldman* does not apply but then going on to dismiss the case on abstention grounds because the "[d]isposition of the state-court action will assuredly do away with all claims before this Court") (cited in PSM at 6). The question of whether to stay this case is potentially complicated by the fact that plaintiff is seeking to assert class claims, although no motion for class certification has been filed yet. There is also the pending fully-briefed motion to dismiss, which raises numerous issues. To assist the Court in determining how best to proceed, the Court requests that the parties submit a joint status report with their recommendations. The report is due 14 days from the date of this order.

**ENTER:**

_____
**JOHN A. NORDBERG**
**Senior United States District Court Judge**

**DATED:** 3-6-2013